## The State ex rel. William H. Lord v. The Board of Supervisors of Washington County.

1. Mandamus.—Where the right which is sought to be enforced is doubtful, or the performance of the duty which is exacted rests in the discretion of the person or body of whom performance is required, a writ of *mandamus* will not awarded.

2. Same.—Where this writ is applied for to enforce performance of a statutory requirement, the provisions of the statute and the precise nature of the duty to be performed must be so clear and distinct as not to admit of a doubt, or it will not be awarded.

3. Same.—Where a statute required the supervisors of a county to let to the lowest bidder the construction of *a good and commodious* courthouse, etc., etc., at a particular place, and to be finished by a certain time, *upon the plan and style generally adopted by the different counties of this state, without providing for obtaining a site* for such buildings: *Held*, that the duty thus imposed was of such an uncertain and doubtful nature, that a *mandamus* would not be awarded to compel the supervisors to let contracts and proceed to the erection of such buildings.

4. County seat.—The county seat of Washington county had been located at a particular place, and afterwards it was removed by an act of the territorial legislature to another place for the period of five years. *Held*, that after the lapse of that period, it would not revert to the place where it was so first located, unless further legislation should intervene to locate it there, as at the expiration of that time there would be no established location of it.

5. The act prescribing the duty sought to be enforced in this case, was entitled "an act to provide for the permanent location of the seat of justice of the county of Washington, *and* for the division of the same, and for the organization of the county of Tuscola." STOW, C. J., while he concurred in the points decided, was of the opinion that the act was not void as embracing more than *one subject* (sec. 18, art. 4 State Const.); that the subject of the act was Washington county only, though it contained several provisions relating to it; that the true test in such cases is not the details of the law, but its general scope—its subject; that this provision of the constitution was directory, not mandatory. But see *Mills v. Charleton,* 29 Wis. 400; *Evans v. Sharp,* id. 564.

(2 *Chand.* 247.)

APPLICATION for *mandamus.*

The relator, on the fifteenth day of May, 1850, applied to the chief justice for an order upon the supervisors of Washington county, to show cause on the first day of the next succeeding term of the supreme court why a peremptory writ of *mandamus* should not issue, commanding them to proceed forthwith to let the contract for the erection of a court-house and jail, and fire-proof clerk's and register's office, at the village of Port Washington, in said county, and to proceed to the erection of the same without delay, and to levy a tax to defray the expense of the same, as was required by an act of the legislature of the state, approved February 8, 1850, entitled "an act to provide for the permanent location of the seat of justice in the county of Washington, and fix the division of said county, and the organization of the county of Tuscola." An order to that effect was made by the chief justice, founded upon an affidavit made by the relator, and then presented to the following effect, to wit:

"William H. Lord, of Port Washington, Washington county, being duly sworn, doth depose and say: That by act of the legislature of the state of Wisconsin, approved February 8, 1850, entitled "an act to provide for the permanent location of the seat of justice of the county of Washington, and for the division of the same, and for the organization of the county of Tuscola," the board of supervisors of said

county were directed to let the contract for building a court-house and jail, and fire-proof clerk's and register's office, at the village of Port Washington, in said county, on the first Monday of May, 1840, and to proceed to the erection of the same without delay; that the said board did meet in pursuance of said law, and organized itself by the election of a chairman, but wholly neglected and refused either to let the contracts aforesaid or to provide for any means for the erection of said buildings as aforesaid; but, as your deponent is informed and believes, refused to do so, because the members of the said board believed, or said they believed, the act aforesaid to be unconstitutional and void. Your deponent further states, that the said board met on the day succeeding the said first Monday, in pursuance of a call signed by a majority of the members, and, without taking any steps either to let the contract or provide for the erection of the buildings, as is by said act required, immediately adjourned without day. And your deponent further says, that he is informed and believes that the said board, or a majority of the members thereof, give out and assert that they should wholly disregard the requisition of the said act; and your deponent believes that, unless commanded by the mandate of the supreme court, they will continue so to neglect and refuse."

The board of supervisors put in an answer in justification of thus doing, which the reporter is unable to obtain, and which it is apprehended is not material to be set out, inasmuch as the decision of the court does not involve the consideration of it. To this answer the relator demurred. Upon these proceedings the motion came before the court.

*E. G. Ryan* and *A. D. Smith*, for relator.

*J. E. Arnold* and *J. Holliday*, for respondents.

JACKSON, J. An application is made to this court for a peremptory *mandamus*, to be directed to the board of supervisors of Washington county, commanding them to proceed,

The State ex rel. Lord vs. Board of Supervisors of Washington County.

under the act of the last session of the legislature, to let, to the lowest bidder, the contract for the erection of the county buildings, and to levy an additional tax upon the taxable property of the county for the purpose of defraying the expense and cost of their erection.

A writ of *mandamus* is the highest judicial writ known to our constitution and laws, and, according to long approved and well established authorities, only issues in cases where there is a specific legal right to be enforced, or where there is a positive duty to be and which can be performed, and where there is no other specific legal remedy. Where the legal right is doubtful, or where the performance of the duty rests in discretion, a writ of *mandamus* cannot rightfully issue. *Kendall v. United States*, 12 Pet. 613 ; 18 Wend. 89 ; 5 Binney, 103 ; 12 Johns. 416 ; 1 Cow. 423.

Tested by these principles of law, should the present application be granted ?

The following is the act which is sought to be enforced by this writ :

" The board of supervisors shall, on the first Monday of May next, proceed to let, to the lowest bidder, the contract for the erection of a good and commodious court-house, upon the plan and style generally adopted by the different counties of this state, a good and sufficient jail, and good and commodious fire-proof clerk's and register's office, upon grounds in the village of Port Washington, to be located by the supervisors of the county of Washington ; said buildings to be erected and ordered during the summer of 1850, and finished by the first day of July, 1851 ; and for the purpose of defraying the expense and cost of erecting said buildings, the said supervisors are directed to levy an additional tax upon the taxable property of said county, in addition to the ordinary taxes of said county for the year 1850, equal to the amount of the contract price of said buildings."

Various objections were raised by the respondents, and ably

argued to this court, which it is not necessary to decide, among which is the constitutionality of the act of 1850.

The court are all of opinion that the power to award the writ, in a case like the present, is clearly conferred by the constitution and laws of the state.    Nor is there any division of sentiment in regard to the operation of the law of 1847, by which the county seat of Washington county was located at the village of Port Washington for a period of five years. There cannot be two separate and distinct locations at one and the same time ; nor can there be a right of reverting or returning to a former location, without an express law to that effect. In this case there is none.

The act of 1847 operated as an abrogation of all previous acts on that subject, and when the term of five years expires there will be no established location of the county seat of Washington county.

It will be the duty of the legislature, on the happening of that event, to provide by law for the establishment of a new location, and that can be done without any conflict with the provision of the constitution regulating the removal of county seats.    But until the legislature shall make some additional statutory provision touching the permanent or temporary location of the county seat, it must be regarded as fixed at Port Washington.    Sec. 8, art. 13, Const.

The main objection to the allowance of the writ prayed for by the relator, arises from the vagueness and uncertainty of the law prescribing the duty of the respondents.

The board of supervisors were required, on the first Monday of May, 1850, to " proceed to let, to the lowest bidder, the contract for the erection of a good and commodious courthouse."    No provision is made for advertising or obtaining proposals, and it might well have happened that there would be no bidders, in which case the respondents could not have let the contract in the manner required by law.    Nor was there any provision made for the purchasing or obtaining a site for

the county buildings ; and it would seem to me to be unreasonable, if not impracticable, to compel the board of supervisors to contract for the erection of a court-house, jail and clerk's office, without naming any lot or place for their location, and without its being known where, in fact, they were to be erected.

But I have much greater difficulty with another clause of the act.

The respondents are required to enter into a contract for the erection of a good and commodious court-house, " *upon the plan and style generally adopted by the different counties of this state.*" There is no criterion that I am aware of, by which to determine what is the " plan and style generally adopted by the different counties of this state," in the erection of their court-houses. It is believed that there are no two court-houses in the state which are alike in their form, material, dimensions and arrangements. Every member of the board of supervisors might have his individual opinion, and maintain with equal sincerity, that his plan and style approached the nearest to the " plan and style generally adopted." And the members of this court might be equally variant, in their own views upon the subject.

It is clear, therefore, to my mind, that there is not, in this case, on the part of the relator, a specific legal right to be enforced, nor, on the part of the respondents, a positive duty to be performed, and which can be performed.

While, therefore, in a case wherein the facts were such as to justify the awarding of a writ of *mandamus*, this court would not hesitate to interpose its authority to compel any individual or public body to discharge a duty, or perform an act required by law, I am satisfied that this is not one in which it would be safe or proper to exercise such authority.

The writ must be denied.

STOW, C. J. While I concur in denying the *mandamus* in this case, the mandatory part of the law being too vague to

be thus summarily enforced, I do not think it becomes me, or my position, to permit the grave constitutional question which is involved, to pass unnoticed. That question, which is one of great importance to the people of Washington county, and of great interest to the whole state, has been formally presented to our consideration, and it has been discussed with an ability and research never surpassed in this forum. It is *the question* in the case: the one which all parties are anxious to have settled, and for the determining of which this proceeding, as I understand, was instituted. I think it is the duty of this court to meet it at once, and to put it forever to rest. The other members of the court, however, take a different view of the subject, and the opinion which I now deliver, is my own alone. None of my brethren are responsible for it, nor is it to be regarded at all as a judicial decision or binding authority.

The county seat of Washington county, after having been for years the subject of controversy, and of various legislative action, was, by the act of 1847, p. 37, fixed at Port Washington, for the term of five years. This act repealed in its terms, "all acts, or parts of acts, theretofore passed, which contravened its provisions."

The first inquiry then, is: What legislation did contravene the provisions of this act of 1847 ? I answer, unhesitatingly, all previous legislation affecting the location of the county seat. In the case of La Fayette county, argued at this term and already passed upon, we have held that the removal of a county seat, even for temporary purposes, to a new place, by necessary implication repeals the law locating it at the old one. That, as far as this question is involved, is precisely this case; for I do not suppose it can be contended, that a distinction is to be made between a temporary location of five years, and a temporary location, the term of which depended on a popular vote. In either case the location, for the time being, was unqualified, and of necessity inconsistent with a

location at any other place. The most that can be said in both instances against the rights of the places thus possessing the county seat, is that in one case, the right was subject to be determined by legislative action after the specified period ; and in the other, at any time by a popular majority.

Port Washington then was, at the adoption of the constitution, for the time being, the county seat ; and was, as has already been held in the case of La Fayette county, within the constitutional provision—at least, until the expiration of the term provided by the act of 1847. A curious inquiry might here arise, whether this legislative location of five years was not by the constitution made permanent ; but as I do not deem it material, in the view which I take of the act of last winter, I pass it by.

One of two things is certain : either that Port Washington had become, by the constitution acting on the law of 1847, the permanent county seat ; or, that after the expiration of five years, there would be no legal county seat, and that in the absence of any, the legislature would have the power, as in the case of organizing a new county, to locate one—the constitutional restriction not applying. If the first position is a correct one, there is of course an end to the real question involved in this case. But assuming the other position, the inquiry is then directly presented : has the legislature by its act of last session, made Port Washington the permanent county seat ? In my opinion it has. And all concede this to be so, if that act is constitutional. And why is it not ? Because it is said to be local ; to embrace more than one subject ; and not truly to express its object in its title, as required by the constitution in regard to private and local laws.

How this act can be said to be local, in a political and in the constitutional sense of that word, passes my understanding. It is a public law, concerning the police and municipal organization of the state. The state itself as an integral sovereignty is made up of lesser municipal organizations ; the most essen-

tial and important of which is the county organization.    An admirable system !  and our greatest safeguard against the invention of modern despotism, *centralization*.   A catastrophe by the way, of which democratic republics are in quite as much danger as are constitutional monarchies.   Through the counties the sovereignty performs many of its most important acts.    Its judicial functions are exercised through the, instrumentality of the counties ;   and through county officers the state revenue is levied and collected.    Indeed, it is only by an aggregation of the counties, and the harmonious performance of their appropriate functions, that we obtain the idea of the sovereignty—the state.    *L' Etat c' est moi !* ' is an idea more foreign to the American mind than · is the language of the despot who uttered it.    The state, with us, is composed of lesser municipalities, and acts by and through them, and pervades them all ;   and counties, in a political sense, can no more be considered local, in reference to the state, than can the arteries be, in reference to the heart.    The act makes provision for a new circuit court, whose jurisdiction, as I had occasion to remark in the case of *Putnam v. Sweet, ante*, is of the most plenary character ;   and by requiring the erection of a county jail, provides, as the law now is, for a new state prison. Geographically the law is local, but politically it is not.  · As well might it be said that a law of congress establishing a new collection district ;   admitting a territory into the Union as a state ;   or annexing a foreign nation to the republic, is local. Nay, indeed, in such a sense it is difficult to conceive what is not local.

But admitting, for the purpose of argument, the law under consideration to be local, what is the objection to it ? That it contains more than one subject.    More than one subject !  How so ?  What is its subject ?  Is it not that portion of the territory of the state known as Washington county ? And though it may embrace many and various provisions, is not Washington county its proper and only subject ?   Clearly

so. *Subject*, says Webster, is "that on which any mental operation is performed; that which is treated or handled." Washington county, its police, its officers, its county seat, its courts, its county buildings, and, in a particular contingency, its division, *was* the subject of the law. The various details of the law *were* not its subjects. There is no plural in its subject. The object that it contemplated, the thing it acted upon, the locality it particularly concerned—Washington county—*was* its subject. It will not do to refine away laws in this manner. Few statutes could stand such a hypercritical test. An act conferring a pension on the widow, and making provision for the support and education of the infant children of a meritorious soldier killed in the public service; an act dividing a town, and providing for the organization of a new one (which is exactly this case); an act making appropriation to one person for fire-wood, and to another for sawing it, for the use of this court-room, and almost every other act which, under the contracted sense assumed of this being a local law, could be called local or private, would be deemed unconstitutional; and the persons receiving money or performing service under it would be held liable to an action to refund, or to answer in trespass or otherwise for their acts. No; the true test is, not the details of the law, but its general scope, its subject. And if it be in its nature one—such a matter as the mind acts upon by one operation, and need not necessarily be disintegrated in order to be intelligible, then it is one subject, and is not obnoxious to the constitutional interdict.

And here I am met with the objection that, though this law may not be unconstitutional for duplicity, it is so, being local, because its subject is not correctly expressed in its title.

I have had no experience in legislation, and my studies have not been particularly directed to the *minutiæ* of constitutional law; but I confess that this objection, that the act does not in its title correctly express its subject, has taken me by

surprise. It seems to me that the constitutional provision is merely *directory* to the legislature, and is not the subject of judicial review. To regard it in any other light would be to make the judiciary a supreme and despotic censor of the legislature in regard to all that mass of legislation which is not general and public. It cannot be that the constitution, its framers and adopters, intended to confer this censorious and monstrous power upon the judiciary, especially as that same constitution had taken care that each department of the government should be constituted and remain independent and co-ordinate in its sphere, and the judicial to be removed from those popular influences which may very properly address themselves to the legislative department. But suppose it is otherwise—suppose this court, and for that matter every other, from a justice of the peace upwards, is invested with the power of pronouncing a law unconstitutional because its title does not correctly state its subject, what is the meaning of the constitutional provision ? It is that the title should indicate— should call the reader's attention to the nature of the law ; and if so, that is enough. The constitution cannot mean, as the respondent's argument assumes, that to make the law valid, the title must be a correct *syllabus* of it. All that can be required is, that the title should correspond with, and not be incongruous to, the provisions of the law. The probable object of the constitution was to guard members of the legislature from unwittingly voting for an objectionable law under a captivating title. It is simply directory, and ought not to be regarded as a kind of condition precedent, on which the validity of a law depends. In any other view of the subject, in order to be safe, it would be necessary for the title to recite the whole body of the act—a piece of bungling machinery that I think the common-sense statesmen of our day would hardly try to set in operation.

There is no magic in a name. The subject-matter of the law is Washington county—that territory, that part of the

state known as such, and it is immaterial what title the act bears, as long as its provisions are intelligible, practicable and constitutional.

In my opinion the law is constitutional; and though this court cannot now enforce it, I think the supervisors and people of Washington county, as good citizens, should in good faith carry it into effect.

*Mandamus* denied.

LARRABEE, J., did not hear the argument or participate in the decision.